IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUCEMY VELAZQUEZ, ARTURO
TORRES-APONTE, and their conjugal
partnership

Plaintiffs

vs                                          CIVIL 98-1865CC

P.D.I. ENTERPRISES, INC.
P.D.I. ENTERPRISES OF NEVADA, INC.
and BACO DRUG CENTER, INC.

Defendants



## ORDER

This is an action brought by Lucemy Velázquez, her husband and conjugal partnership for alleged employment discrimination based on gender violation of Title VII of the Civil Rights Act of 1964, 42 USC 2000e, and for violations of the equal Pay Act of 1963, 29 U.S.C. §206(d). Plaintiffs also brought claims under the laws of Puerto Rico in the last three causes of action. The six causes of action set forth in the complaint are all brought against the three defendants P.D.I. Enterprises, Inc; P.D.I. Enterprises of Nevada, Inc.; and Bacó Drug Center, Inc.

As set out in the plaintiffs' opposition to the motion, at page 2, on December 3, 1993 P.D.I. Nevada purchased F. Bacó Soria & Hnos., Inc., defendant Bacó's immediate corporate predecessor. P.D.I. Nevada is, in turn, a subsidiary of P.D.I. Enterprises. During 1995 Bacó Soria was reorganized as Bacó Drug Center, Inc., a corporation organized under the laws of Puerto Rico.

Defendants P.D.I. Enterprises, Inc. and P.D.I. Enterprises of Nevada, Inc. have filed a Motion to Dismiss for Lack of Jurisdiction (**docket entry 8**) contending that they do not have minimum contacts with the District of Puerto Rico that would allow the court to exercise personal jurisdiction, and that plaintiffs' causes of actions do not arise out of any activities linking

AO 72A
(Rev.8/82)

them to this forum. Plaintiffs argue that the "organizational structure of these three corporations evidence that all three corporations are one sole business entity, dominated by the same group of persons, and were purposefully organized in such manner for the purpose of conducting, directly or indirectly, commercial activities in Puerto Rico. At page 14 of their opposition (**docket entry 14**), plaintiffs specifically state as follows:

> As previously stated, the basis for plaintiffs' federal claims is Velázquez employment relationship with defendants Bacó, PDI and PDI Nevada. Even assuming, *in arguendo*, that the evidence presented is not sufficient for this Court to conclude Bacó was a mere "front" for PDI and PDI Nevada's conducting of business in Puerto Rico, it is clearly indisputable that, at the end, Velázquez was PDI's direct agent in Puerto Rico....

Plaintiffs allege that Bacó is a wholly owned subsidiary of PDI Nevada which, in turn, is owned by PDI, which directly controls both companies. In 1996, Velázquez, who began working for Bacó in 1993 as its Purchasing Manager, competed for the position of company president against Robert Glasgow, an American male newcomer who allegedly did not have Velázquez' knowledge and experience. (Complaint, paragraph 21.) PDI owner and CEO Irwin Schaeffer resolved the competition by naming both of them as co-general managers (id. at 24), with Glasgow as Financial and Operations Vice President and Velázquez as Purchasing and Sales Vice President. (Id. at 25.) At paragraph 27, Velázquez states that, although the positions were equal in responsibilities, her remuneration package constituted roughly 50% of what Glasgow received. Due to the situation delineated in the complaint, plaintiff states that in May 1997 she requested dismissal from Bacó and the corresponding severance payment. She alleges that was then asked to remain as a PDI employee and was informed that she would be paid all money due as well as a $15,000 bonus. (Paragraphs 39-41.) Eventually, according to the complaint, she was given notice of her termination by PDI, effective November 1, 1997, which then proposed that she stay on as an independent contractor.

CIVIL 98-1865CCC                                      3

We must initially note that, PDI's nexus to Puerto Rico is solely as a customer of its subsidiary, Bacó. The evidence demonstrates that the minimum contacts with this jurisdiction to allow for general jurisdiction pursuant to the long-arm statute do not exist.

Specific jurisdiction may be asserted where the cause of action arises directly out of, or relates to the defendant's forum-based contacts. <u>United Electrical Workers v. 163 Pleasant St. Corp.</u>, 960 F.2d. 1080, 1088-89 (1st Cir. 1992). The First Circuit has steadfastly rejected the exercise of personal jurisdiction whenever the connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect. <u>Id.</u> at 1089. Instead, the defendant's in-state must form an important, or [at least] material, element of proof, in the plaintiffs case. <u>Id</u>. To summarize these principles, the Court of Appeals for the First Circuit stated:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

<u>Id</u>. Litigants who insist that the corporate veil be brushed aside must first prove three things: lack of corporate independence, fraudulent intent, and manifest injustice. <u>Id.</u> at 1093.

At page 2 of their opposition to the motion plaintiffs allege that the organizational structure of the companies evidence that " ... all three corporations are one sole business entity, dominated by the same group of persons, and were purposefully organized in such manner for the purpose of conducting, directly or indirectly, commercial activities in Puerto Rico." In support of this statement, plaintiffs submit the deposition testimony of Mr. Steven Staneff, who had worked for PDI and then became Bacó's president, Steven Staneff, taken by the law firm

McConnell Valdés in the course of another case, <u>Eli Lilly Export S.A. et al. v. Bacó Drug Center, et al.</u>, Civil No. ECD 97-0529(401).

The plaintiffs conclude, at p. 5, that " ... the acquisition of Bacó by PDI Nevada enabled PDI to continue, augment and reduce the costs of its business transactions in Puerto Rico, by way of consolidating shipments at Bacó's facility in Puerto Rico, transference of inventory from Bacó to P.D.I. and P.D.I. Nevada, and by using Bacó, a fully authorized distributor of pharmaceuticals, to sell directly to those P.D.I. clients, that could not be served directly by P.D.I." and again at p. 16, that "P.D.I. and P.D.I. Nevada's commercial venture in Puerto Rico was a controlled, continuous and well-thought scheme to take advantage of Bacó's full distributorship and circumvent their own limitations...."

Plaintiffs' own observation attests to the fact that Bacó was a full distributorship operating as an independent business when it was purchased by P.D.I., which had as one of its purposes in making this alliance the goal of circumventing some of its own marketing limitations. The bottom line is that plaintiffs ask that we pierce the corporate veil to find that Bacó, upon its purchase by P.D.I., ceased to be a company on its own merit and became merely an alter ego of the P.D.I. entities.

Plaintiffs support their position with the following facts. Staneff was a P.D.I. employee who devoted his time to Droguería Bacó after its initial purchase by P.D.I.,[1] and then was sent to Puerto Rico to become the president of the company. He stated that Bacó's sales terms for P.D.I. varied from those of other customers. His testimony also demonstrates overlapping of ownership and control by stockholders and officers of the three corporations.

---

[1] Staneff testified that P.D.I. Nevada was a holding company. He was not clear about the exact nature of the relationship between that company and P.D.I. Enterprises. For purposes of our analysis, the term P.D.I. will refer to both P.D.I. entities.

A plaintiff who asks a court to disregard independent corporate structures by piercing a subsidiary's "corporate veil" faces a high burden of proof. The concept of limited liability is so basic a principle of corporate law that courts are hesitant to disregard the independent corporate structure as between a parent corporation and its corporate subsidiaries. <u>Schaefer v. Cybergraphic Systems, Inc.</u>, 896 F.Supp. 921, 925 (D.Mass 1994), citing <u>United Electrical Workers, supra</u>, at 1083-84.

> Corporations which simply try to limit their overall liability by establishing, or acquiring, separately incorporated subsidiaries do not thereby transgress legal or ethical norms. In our commercially sophisticated society, limited liability is often a paramount consideration in the decision to maintain corporate separateness, and properly so.

<u>Id.</u> at 1093. The standard for veil piercing in the Court of Appeals for the First Circuit is delineated in <u>In re Acushnet Rivera & News Bedford Harbor Proceedings Re Alleged PCB Pollution</u>, 675 F.Supp. 22 (D.Mass. 1987). The <i>Acushnet</i> court gave a valuable list of factors to be considered in veil piercing:

> (1) Inadequate capitalization in light of the purposes for which the corporation was organized,
> (2) Extensive or pervasive control by the shareholder or shareholders,
> (3) Intermingling of the corporation's properties or accounts with those of its owner,
> (4) Failure to observe corporate formalities and separateness,
> (5) Siphoning of funds from the corporation,
> (6) Absence of corporate records, and
> (7) Nonfunctioning officers or directors.

<u>Id.</u> at 33 citing <u>Town of Brookline v. Gorsuch</u>, 667 F.2d 215, 221 (1st Cir. 1981). No one of these factors is either necessary or sufficient to disregard corporate structure. <u>Id.</u>

> Quoting from an earlier First Circuit case, the <i>Acushnet</i> court stated:

> "There is nothing fraudulent or against public policy in limiting one's liability by appropriate use of corporate insulation." In its own words the <i>Acushnet</i> court added: "Avoiding liability through the corporate from, without more, is not a wrong that equity's hand must right." Instead, for the veil to be pierced, there must be, "[i]n addition . . . evidence of undercapitalization, pervasive control, fraud or any of the other specific criteria already discussed."

Stephen B. Presser, Piercing the Corporate Veil, §3.03 p.3-25 (1998) (citations omitted).

Fraud can be proven by some cognizable showing that the parent corporation maintained the subsidiary to avoid its statutory responsibilities, acted in a blameworthy manner, looted the subsidiary, or so undercapitalized the subsidiary that the latter could not reasonably have been expected to meet its obligations. Id. at 3-30, note 64. The fraudulent intent element requires a plaintiff to show some blameworthy conduct or culpability on the parent's part in controlling the subsidiary. Schaefer, supra, at 925.

Staneff's uncontroverted deposition testimony contains the following facts that support the legitimacy of Bacó's corporate structure: Bacó was in the wholesale pharmaceutical business. It sold to local retail outlet customers as well as some export customers. Prior to P.D.I.'s acquisition of Bacó, P.D.I. purchased pharmaceuticals from Bacó Soira to sell in the United States. It continued to do so after the acquisition. At the time of purchase, the company was solvent, but there was room for improvement. There was financial growth in 1994, substantial growth in 1995. The statistics appeared to demonstrate that 1996 was a good year, also, but there was a problem reconciling the monthly financial statements with the inventory. According to the deposition, P.D.I. made a loan to Bacó of $1,500,000 to payoff vendors, for other transactions and to help the business grow. Bacó also obtained a revolving credit loan for five million dollars from Bank of America.

Bacó's major customers included McKesson, Bindley Western and Bergan Brunswig, as well as P.D.I. At times, Bacó would sell P.D.I. owned merchandise in the States which would be directly delivered to the customer, who would then pay Bacó. P.D.I. was classified as a "non-authorized" distributor of all pharmaceuticals, while Bacó was "authorized." Because some of the customers, according to their own regulations would only buy from completely

authorized sources, the parent/subsidiary relationship allowed P.D.I. merchandise to be sold to these customers. P.D.I. also bought merchandise from other distributors in Puerto Rico. P.D.I. used its subsidiary to consolidate shipments it had purchased from other wholesale distributor, so that all the orders from Puerto Rico could be shipped together.

The financial statements of P.D.I. and Bacó were consolidated into one statement for reporting purposes. The consolidated reports were kept in the custody of P.D.I.; Bacó kept copies of its own financial statements. When acquired by P.D.I. in 1993, Bacó was financially solvent but needed to reestablish its credit limits with the vendors. The financial condition improved in 1994; there was substantial growth in earnings in 1995 and again in 1996. Notwithstanding the fact that there was an overlap between the officers of Bacó and P.D.I., Staneff's testimony supports the existence of Bacó as a real, functioning corporation with active officers and directors, corporate records and active interaction with its customers. Money moved between the companies was done as loan.

We must also note that, even if Velázquez worked as a P.D.I. employee during the last few months of her tenure,[2] she still fails to state a claim against movants. The acts upon which her Title VII and Equal Pay claims, as well as their Commonwealth counterparts and tort claim are anchored during the time she was a Bacó employee, and the alleged discriminatory treatment in violation of those statutes were acts of Bacó, not of the out of state corporate defendants.

---

[2]Velázquez did not produce a copy of any contract she signed with P.D.I. The check stubs which can be verified as gross pay are either from Bacó or Kelly Services.

CIVIL 98-1865CCC                              8

For the above stated reasons, the Court lacks personal jurisdiction over P.D.I. Enterprises, Inc. and P.D.I. of Nevada, Inc. and GRANTS their Motion to Dismiss.[3]

SO ORDERED.

At San Juan, Puerto Rico, on September 30, 1999.

                                      CARMEN CONSUELO CEREZO
                                      United States District Judge

---

[3]Because both parties submitted extrinsic evidence in support of their respective positions, the motion was considered as a motion for summary judgment under Fed.R.Civ.P. 56.

AO 72A
(Rev 8/82)